OPINION OF THE COURT
Murray Mogel, J.
The defendants Ramon Diaz, Marlon Brown and Miguel *292 Justino are charged with criminal possession of a weapon in the third degree. All three defendants have moved to suppress the gun recovered from the car. A hearing on the defendants’ motions was held on November 1 and November 15, 1991.
FINDINGS OF FACT
On May 2, 1991 Police Officer James Fuchs was working the 3:00 p.m. to 11:45 p.m. shift on patrol in a marked RMP along with his partner Police Officer Lee Paktor. At approximately 8:15 p.m. the officers were driving southbound on Lexington Avenue when Officer Fuchs observed a 1991 maroon Dynasty run a red light at 107th Street. The officers activated their siren and flashing lights and the Dynasty pulled over near 106th Street. The officers got out of the RMP and as they approached the Dynasty, the driver, defendant Diaz, also got out and started to converse with Officer Paktor. Officer Fuchs approached the passenger side of the Dynasty and shone his flashlight into the car. On the floor of the front passenger side, between the feet of defendant Justino who occupied the front passenger seat, Officer Fuchs saw a rectangular white box with the marking "9mm” on it. The box was partially open but empty, revealing a molded styrofoam liner with holes for the placement of bullets. Officer Fuchs recognized the object as a bullet box and alerted his partner to the possibility of a gun in the car. He then asked defendant Justino to get out of the car. While Officer Paktor frisked defendant Diaz and removed him to the back of the car, Officer Fuchs frisked defendant Justino and then removed him to the back of the car also. The rear passenger, defendant Brown, was then told to get out, frisked and moved to the back of the car. No weapon was found on the defendants. Officer Fuchs then returned to the car and proceeded to search for a gun. In the closed but unlocked glove compartment Officer Fuchs found a loaded 9mm Interarms Firestar. All three defendants were then arrested.
Defendant Diaz testified that when he was initially stopped he presented to Officer Paktor a valid New York driver’s license and a valid signed rental agreement for the car.
CONCLUSIONS OF LAW
It is clear that their observation of a traffic violation gave the police officers the right to stop the defendants’ car and *293 request to see the driver’s license and rental agreement (People v Ingle, 36 NY2d 413). Although the papers were apparently in order, the observation of the bullet box on the floor of the car gave the officers reason to fear for their safety and justified their action in ordering the occupants out of the car and frisking them for weapons (CPL 140.50 [3]; People v De Bour, 40 NY2d 210). The disputed issue in the instant case is whether the police officers, having safely removed and frisked the car’s occupants, were entitled to enter the car and conduct a further search for weapons.
The defendants contend that Officer Fuchs conducted an illegal search not based on probable cause because he merely "speculated about the possibility” of a gun being in the car. Nor was the search justified for safety reasons, they contend, since the car’s occupants had been removed to a safe distance at the rear. In support of their argument, the defendants rely primarily on the Court of Appeals decision in People v Torres (74 NY2d 224).
In Torres (supra), the police received an anonymous tip that a man who was wanted for murder could be found at a certain location carrying a gun in a shoulder bag. When they arrived at the location, the police officers saw the man getting into a car with another man. With guns drawn, the officers ordered both men out of the car and frisked them. One of the officers then reached into the car and removed the shoulder bag the wanted man had been carrying, searched it and found a gun inside. The Court of Appeals granted suppression of the gun, holding that the police did not have probable cause to search any closed containers inside the car for a weapon (citing People v Belton, 55 NY2d 49, which requires a nexus between the arrest and the subject matter of the search) and further rejecting any safety justification for the search of the bag since its presence in the car posed no threat to the officers once they had moved the car’s occupants away from it. Although noting that the United States Supreme Court in Michigan v Long (463 US 1032) upheld such a search under the Federal Constitution on the "theoretical basis” that when the suspects reentered the car they might cause harm to the officers, the Court of Appeals held that State privacy rights were nevertheless violated because the removal and search of the bag "was not reasonably related to the need to protect the officers’ safety in this street encounter” (People v Torres, supra, 74 NY2d, at 231).
The defendants herein argue that Torres (supra) is disposi *294 tive and requires that this court grant suppression of the gun found in the glove compartment. This court does not agree. The reason the court in Torres focused on the safety rationale for the search of the bag inside the car is because the anonymous tip did not provide the police with probable cause to support their actions. By contrast, in the case at bar this court finds that the search of the car was supported by probable cause based on the officers’ observations.
In People v Ellis (62 NY2d 393) the defendant’s car was stopped for a traffic violation but he could not produce a license or any papers for the car. Before taking him to the police station, the officer frisked him and found two bullets in his pocket. His passengers were then ordered out of the car and frisked, the car’s interior was searched, and finally the gun was found inside a locked glove compartment which the police broke open. Suppression was denied by the Court of Appeals because the "discovery of the bullets during the frisk permitted the inference that defendant had a gun on his person or in the area and provided the police with probable cause to search the car” (62 NY2d, at 397). In a more recent case from the Second Department, the observation during a traffic stop of two bullets on the floor of the car and a box of shotgun shells in the open glove compartment provided probable cause to frisk the car’s occupants and to search the car’s interior (People v Kramer, 132 AD2d 572). This court finds that the presence of a bullet box, even if empty, permits the same inference as does the presence of bullets, that is, that there is a gun nearby. Therefore, based on Ellis (supra), the search of the car’s interior in the case at bar was supported by probable cause.
This finding of probable cause to search distinguishes the instant case from Torres (supra) and obviates any need to consider a safety rationale for the search. However, it should be noted that the Court of Appeals in Torres was careful not to foreclose "circumstances where, following a lawful stop, facts revealed during a proper inquiry or other information gathered during the course of the encounter [i.e., the presence of a bullet box] lead to the conclusion that a weapon located within the vehicle presents an actual and specific danger to the officers’ safety sufficient to justify a further intrusion, notwithstanding the suspect’s inability to gain immediate *295 access to that weapon” (74 NY2d, at 231, n 4). This court finds that the search of the car in the case at bar was additionally justified for safety reasons.
The defendants’ motions to suppress are denied in their entirety.